**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 1, 2026

By ECF

The Honorable Catherine O'Hagan Wolfe
Clerk of the Court
United States Court of Appeals
for the Second Circuit
The Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

Re: United States v. Kamaldoss
Docket No. 24-824

Dear Ms. Wolfe:

The government respectfully submits this supplemental letter brief to discuss the impact on this appeal of this Court's recent decision in *United States v. Alisigwe*, — F.4th —, 2026 WL 2751713 (2d Cir. Sep. 17, 2026), which held that no warrant or probable cause is required for government officials to search a traveler's cellphone at the border. *Alisigwe* squarely rejects the extension of *Riley v. California*, 573 U.S. 373 (2014), to border searches. *Alisigwe,* 2026 WL 2751713, at *5, 18 (Lee, J., concurring) ("I agree that neither a warrant nor probable cause is necessary to search a cellphone at an international airport."). Joining all the other Circuits to consider the issue, the Court in *Alisigwe* found that *Riley* did not disturb this Circuit's precedent holding that a manual search of a traveler's property at the border is a routine search that does not require suspicion. 2026 WL 2751713, at *5, 8-11.[1] While Kamaldoss's case involves the forensic searches of electronic devices, *Alisigwe* shows these searches were lawful.

While this Court previously noted that the precise line between what is and is not a routine border search had been unclear, *see Tabbaa v. Chertoff*, 509 F.3d 89, 98 (2d Cir. 2007), the *Alisigwe* Court seemingly drew that line. In *Alisigwe*, this Court explained that Supreme Court

[1] Kamaldoss relied on several district court cases (Appellant's Brief 28-30 (citing *United States v. Smith*, 673 F. Supp. 3d 381 (S.D.N.Y. 2023), *United States v. Sultanov*, 742 F. Supp. 3d 258 (E.D.N.Y. 2024), and *United States v. Fox*, No. 23-CR-227, 2024 WL 3520767 (E.D.N.Y. July 24, 2024))) that *Alisigwe* explicitly rejects. 2026 WL 2751713, at *11 ("Those decisions are wrong.").

precedent required higher levels of suspicion only for border searches of the person, not property, and that balancing tests to determine what is a routine search of property "have no place" in border search analyses. *Id.* at *7, 9-10; *see United States v. Levy*, 803 F.3d 120, 123 n.3 (2d Cir. 2015); *United States v. Touset*, 890 F.3d 1227, 1233 (11th Cir. 2018) ("The Supreme Court has never required reasonable suspicion for a search of property at the border, however non-routine and intrusive….").

Such reasoning also suggests that a forensic border search of a cellphone would be considered routine and would not be subject to a higher level of suspicion. *Alisigwe*, 2026 WL 2751713, at *11 n.9. The *Alisigwe* Court did not rely on a distinction between manual and forensic searches, and there is no basis in *Alisigwe* for extending *Riley* to some border searches but not others. Indeed, while recognizing that cellphones contain many different types of information "that reveal much more in combination than any isolated record," the Court found that "a similar combination of information could be discovered through a search of everything contained in a traveler's luggage and vehicle." *Id.* at *10. The Court noted that travelers at the border have no expectation of privacy in anything they bring into the country and that the Supreme Court "has said that the reasons that might support a requirement of some level of suspicion in the case of highly intrusive searches of the person—dignity and privacy interests of the person being searched—do not apply even to the most extensive searches of property such as vehicle inspection." *Id.* (internal quotation marks omitted); *Touset*, 890 F.3d at 1233 ("We see no reason why the Fourth Amendment would require suspicion for a forensic search of an electronic device when it imposes no such requirement for a search of other personal property…. [I]t does not make sense to say that electronic devices should receive special treatment because so many people now own them or because they can store vast quantities of records or effects. The same could be said for a recreational vehicle filled with personal effects or a tractor-trailer loaded with boxes of documents. Border agents bear the same responsibility for preventing the importation of contraband in a traveler's possession regardless of advances in technology.").

This Court in this case, however, need not decide whether no suspicion or reasonable suspicion is necessary for a forensic border search of cellphones or other electronic devices because here, as the district court correctly found, the government had reasonable suspicion to search Kamaldoss's electronic devices. (SPA:25-26); *see, e.g.*, *Irving*, 452 F.3d at 124 (noting because off-site search was supported by reasonable suspicion, "we need not determine whether they were routine or non-routine").

Regardless of the level of suspicion required, this Court, contrary to Kamaldoss's arguments, reiterated in *Alisigwe* its holdings that the border search exception is not limited to crimes related to the border but rather extends to all criminal offenses, since the government has a strong interest in preventing the entry of unwanted persons or things into the country. *Alisigwe*, 2026 WL 2751713, at *13 ("At the border, customs officials…are [] charged…with protecting this Nation from entrants who may bring *anything harmful* into this country, whether that be communicable diseases, narcotics, or explosives. The government must also prevent the entry of unwanted persons.") (internal quotation marks omitted).

This Court in *Alisigwe* also held that the First Amendment does not impose a separate limitation on the government's authority to conduct border searches of cellphones, as such special protection against cellphone border searches would be both over- and underinclusive of

speech, allowing government officials to search cellphones only for non-expressive conduct but permitting them to freely search for expressive conduct in any other type of property (such as notebooks and diaries). *Id.* at *14-15. Such a novel form of protection would also prevent the government from thwarting the entry of people with ties to terrorism. *Id.* at *15; *see, e.g.*, *United States v. Arnold*, 533 F.3d 1003, 1010 (9th Cir. 2008) (refusing to "carve out a First Amendment exception to [the border search] doctrine because such a rule would: (1) protect terrorist communications which are inherently expressive; (2) create an unworkable standard for government agents who would have to decide—on their feet—which expressive material is covered by the First Amendment; and (3) contravene the weight of Supreme Court precedent refusing to subject government action to greater scrutiny with respect to the Fourth Amendment when an alleged First Amendment interest is also at stake") (internal quotation marks omitted).

Finally, *Alisigwe* strengthens the government's argument that, even if a warrant were required, the good faith exception applied here. Kamaldoss argued that *Riley* itself should have made the agents doubt the lawfulness of their actions since, at the time of the April 2019 search, there was no binding precedent specifically authorizing warrantless device searches at the border. (Appellant's Brief 37-42). But *Alisigwe* rejects the application of *Riley* to border searches and reaffirms this Court's prior caselaw, indicating that the search in this case was legal and, certainly, that the agents had a good-faith basis to think it was so. Thus, the agents acted with good-faith reliance on pre-existing caselaw, providing another path for affirmance here.

For these reasons and those discussed in the government's brief, the Court should affirm.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/ ____________________
Amy Busa
Robert M. Pollack
Assistant U.S. Attorneys