SPEARS
MANNING
MARTINI

October 1, 2026

**VIA ECF**

The Honorable Catherine O'Hagan Wolfe
Clerk of the Court
United States Court of Appeals
for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Fole Square
New York, New York 10007

Re: *United States v. Kamaldoss*
Docket No. 24-824

Dear Ms. Wolfe:

On September 24, 2026, this Court ordered the parties, if they choose, to file supplemental letter briefs on or before October 1, 2026, "addressing their respective views on whether and how this Court's opinion in *United States v. Alisigwe,* --- F.4th --- , 2026 WL 2751713 (2d. Cir. Sept. 17, 2026), affects the disposition of this case." (ECF 111.1.) Defendant Ezhil Kamaldoss respectfully submits this letter brief pursuant to the Court's order and advances the following points in addition to the arguments developed in his prior submissions to the Court.

## I. *United States v. Alisigwe* is distinguishable because the case concerned a limited manual search of a defendant's cell phone at the border, in contrast to the present appeal which involves a warrantless seizure and forensic imaging of a cellphone at the time Mr. Kamaldoss entered the United States and subsequent warrantless off-site forensic searches of his cellphone data.

The Court's opinion in *Alisigwe* does not affect the disposition of this case. The issue presented in this appeal is whether the Fourth Amendment requires law enforcement officials to obtain a warrant upon a showing of probable cause before making a forensic copy of the entire contents of a cell phone seized at the border and later conducting a forensic search of the cell phone off-site. The question presented in *United States v. Alisigwe* was fundamentally different and arose in the context of a law enforcement official manually scrolling through the defendant's cell phone at the border and taking pictures of what law enforcement officials saw while doing so. *Alisigwe*, 2026 WL 2751713, at *3. The cell phone search in *Alisigwe* did not involve a forensic search. *Id.* at *3 and *3 n.1. And no one can plausibly equate manually scrolling through a cell phone in the manner that occurred in *Alisigwe* with the highly intrusive process of forensically copying and searching the entire contents of a traveler's cellphone.

This critical distinction was not lost on Judge Menashi, who wrote for the majority in *Alisigwe.* The majority left for another day the question presented in this appeal as to how the

analysis might differ in the context of an off-site *forensic* cellphone search. The Court in *Alisigwe* explained: "[b]ecause this case involves only a manual review of the contents of a cellphone, we need not decide whether the use of 'sophisticated forensic search methods,' such as 'the off-site forensic analysis of the phone's data,'" might qualify as a nonroutine search requiring reasonable suspicion." *Alisigwe*, 2026 WL 2751713, at *11 n. 9 (quoting *United States v. Kolsuz*, 890 F.3d 133, 146 (4th Cir. 2018)).

The majority opinion explained that the searches at issue were conducted *manually*, not forensically. *Id.*at *7 n. 4 ("This case involves a manual search at the border rather than a seizure or a forensic analysis"). After the defendant unlocked his phone, the law enforcement officer "used his own cell phone to photograph images" of the defendant's phone while scrolling its contents in a limited manner, which images provided evidence of the defendant's involvement in a fraud scheme involving misappropriation of identification and bank documents. *Alisigwe*, 2026 WL 2751713, at *3. The decision in *Alisigwe,* in short, is readily distinguishable as the majority expressly noted.

## II. The *Alisigwe* majority's refusal to extend Supreme Court precedent to manual cellphone searches at the border should be confined to the facts of the case.

The Supreme Court of the United States has squarely recognized the unique nature of cellphones for purposes of Fourth Amendment jurisprudence. The decision in *Riley v. California*, 573 U.S. 373, 393, decided at the dawn of the smartphone, explained that cellphones "implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet or a purse." This pronouncement was not a statement limited to the Fourth Amendment exception for searches incident to arrest but rather a more generally applicable statement about the privacy concerns at stake in the context of cellphone searches. Building on the concerns raised in *Riley*, the Supreme Court in *Carpenter v. United States* described the cellphone as "almost 'a feature of human anatomy.'" 585 U.S. 296, 311 (2018) (quoting *Riley*, 573 U.S. at 385). *See also Chatrie v. United States*, 146 S. Ct. 2193, 2209-10 (2026) (holding that law enforcement invades a cellphone user's reasonable expectation of privacy when accessing location history and thus must obtain a particularized warrant supported by probable cause before doing so). In each of these cases, the Supreme Court determined that the search and seizure of cellphone data without a warrant violated the Fourth Amendment.

This Court has echoed the Supreme Court's recognition of Fourth Amendment protections in the context of cell phone searches. *See United States v. Smith*, 967 F.3d 198, 207 (2d Cir. 2020) ("the search and seizure of personal electronic devices like a modern cell phone or tablet computer implicates different privacy and possessory concerns than the search and seizure of a person's ordinary personal effects"); *United States v. Kirk Tang Yuk*, 885 F.3d 57, n.11 (2d Cir. 2018) (citing *Riley* for the proposition that "modern cellphones present unique Fourth Amendment concerns because of the quantity and sensitivity of information they contain" and noting with approval that probable cause and warrant may be required in the context of searching a cellphone seized under the plain view exception).

In his concurring opinion in *Alisigwe*, Judge Lee tracked Supreme Court and Second Circuit decisions addressing cellphone privacy issues in the context of the Fourth Amendment. Judge Lee concluded that:

> The expansive probing into a person's private thoughts and confidential information that can result from a cellphone search, including medical and financial records, internet browsing history, location tracking, personal messages, photos, and memos, is something that most people, in fact, would find to be an *extreme invasion of their privacy*.

*Alisigwe*, 2026 WL 2751713, at *21 (Lee, J., concurring) (citing *Smith*, 967 F.3d at 207)).

Judge Lee further noted that *Alisigwe* presented a unique set of facts and thus ultimately agreed with the majority's conclusion that the circumstances did not rise to the level of a Fourth Amendment violation. However, Judge Lee emphasized, as Mr. Kamaldoss does here, that "the complex factors" surrounding cellphone searches at the border "warrant a more thorough and case-by-case consideration before concluding that prevention of unlawful entry justifies the elimination of a suspicion requirement to search anyone's cellphone at the border." *Alisigwe*, 2026 WL 2751713, at *21.

Moreover, Judge Lee disagreed with the notion that the cellphone is just another piece of property akin to a suitcase. *Id.* at *19 ("Simply labeling a cellphone as 'property,' to dispense with any requirement of suspicion for its search, denies a fundamental reality of the modern cellphone—it is not a suitcase."). The factual context of *Alisigwe* in contrast to the circumstances at issue in this appeal is thus highly significant.

## III. The cellphone search at issue in *Alisigwe* was very narrow in scope and bears no resemblance to the cellphone searches that occurred in the present case.

The manual searches of the defendant's cellphone in *Alisigwe* were minimal and relatively unintrusive. In *Alisigwe,* there were two manual searches conducted during two separate entries into the United States. In the first, the officer scrolled through a camera roll on the defendant's phone and took pictures of what he thought might be relevant, i.e., pictures of bank account information pertaining to persons other than the defendant. *Alisigwe*, 2026 WL 2751713, at *3. In the second, the officer scrolled through the defendant's phone and photographed a WhatsApp message about a purported payment for a stolen identity. *Id.* Thus, both of the searches in *Alisgwe* involved a brief manual search of one small aspect of the contents of the defendant's cellphone Hence, *Alisigwe* holds only that under the facts presented, a reasonable suspicion was not required before law enforcement conducted its limited review of the defendant's cellphone at the border. Indeed, the *Alisgwe* court expressly acknowledged the limitations of its holding and stated unequivocally that its holding did not address the constitutionality of the far more intrusive forensic analysis of the entirety of a cellphone which is at issue in this case. *Alisigwe*, 2026 WL 2751713, at *11 n. 9

Other cases will present more intrusive conduct by law enforcement that implicate the Fourth Amendment at levels more akin to *Riley*, *Carpenter*, and *Chaterie*. When such cases arise, the Court's analysis must reflect a higher level of Fourth Amendment scrutiny. Mr. Kamaldoss's appeal presents a case in which the level of warrantless intrusion is at its zenith.

Here, without issuing *Miranda* warnings, Customs and Border Patrol officers sought and obtained from Mr. Kamaldoss the passwords to his laptop and cellphone. A computer forensic agent with the Department of Homeland Security then accessed and imaged the devices and extracted *all* of the data from Mr. Kamaldoss's iPhone using Cellebrite, a forensic software program. Mr. Kamaldoss's devices were returned to him approximately two and a half hours later, at which point he and his family were permitted entry into the United States. Over the next thirty days, law enforcement conducted at least two subsequent warrantless searches of Mr. Kamaldoss's electronic devices exploiting access to the entire contents of his cellphone. The searches were conducted *off-site and forensically*—again with no warrant and with no boundaries.

Under the circumstances of Mr. Kamaldoss's case, *Riley* provides the framework for this Court's analysis. Following *Riley,* the Fourth Amendment required probable cause and a warrant before the agents in this case could forensically copy and subsequently conduct an off-site forensic search of the entire contents of Mr. Kamaldoss's devices, in particular, his cellphone. At least four district courts within the Second Circuit have taken this approach drawing on *Riley* and the decisions of this Court. *See United States v. Robinson,* 2025 WL 1359352, *9 (E.D.N.Y. May 9, 2025) (granting motion to suppress and holding that "this Court concludes that the government must have a warrant and probable cause to search a cell phone at the border"); *United States v. Sultanov*, 2024 WL 3520443, at *23 (E.D.N.Y. July 24, 2024) (concluding that "categorically exempting border officials from the Fourth Amendment's warrant requirement fails to adequately protect individuals' reasonable expectation of privacy in the breathtakingly large trove of personal data stored on their cell phones"); *United States v. Fox*, 2024 WL 3520767, at *17 (E.D.N.Y. July 24, 2024) (finding Fourth Amendment violation where CBP officer "attempted to use the border-search exception to shirk the warrant requirement that otherwise applies to cellphones when there was no nexus between the search and the justifications for this claimed exception."); *United States v. Smith*, 673 F. Supp. 3d 381, 394 (S.D.N.Y. 2023) ("None of the rationales supporting the border search exception justifies applying it to searches of digital information contained on a traveler's cell phone, and the magnitude of the privacy invasion caused by such searches dwarfs that historically posed by border searches and would allow the Government to extend its border search authority well beyond the border itself").

Although the *Alisigwe* court reasoned that the brief manual search of a small subset of information contained on a cellphone was akin to searching a suitcase or other property at the border, conducting a forensic search of the entire contents of a cellphone seized at the border weeks after entry into the country is nothing like searching a suitcase at the border. Nor is it anything like a body search at the border, which the Supreme Court has held requires a showing of reasonable suspicion. *See, e.g., United States v. Montoya de Hernndez*, 473 U.S. 531, 540-41 (1985) (body search at the border did not violate Fourth Amendment where law enforcement had a reasonable suspicion that traveler was smuggling narcotics that she had injested). Instead, the off-site forensic

searches of Mr. Kamaldoss's cellphone were an "extreme invasion of privacy" untethered to any purpose underlying the border exception to the Fourth Amendment's warrant requirement. *Alisigwe*, 2026 WL 2751713, at * at *21 (Lee, J., concurring).

The Supreme Court's remarks in *Carpenter* resonate here: "the Court is obligated—as 'subtler and more far-reaching means of invading privacy have become available to the Government'—to ensure that the 'progress of science' does not erode Fourth Amendment protections." *Carpenter,* 585 U.S. at 320 (quoting *Olmstead v. United States*, 277 U.S. 438, 473-74 (Brandeis, J., dissenting)). Applied to this case, that obligation means simply, "get a warrant." *Riley*, 573 U.S. at 403 ("[o]ur answer to the question of what police must do before searching a cell phone seized incident to arrest is accordingly simple—get a warrant").

## Conclusion

For the foregoing reasons and for the reasons set forth in Mr. Kamaldoss's prior submissions to the Court, Mr. Kamaldoss respectfully submits that the decision in *United States v. Alisigwe,* --- F.4th --- , 2026 WL 2751713 (2d. Cir. Sept. 17, 2026), does not affect the disposition of this case.[1] Mr. Kamaldoss respectfully requests that this Court vacate his convictions and order the suppression of the evidence searched and seized from his laptop and cellphone on April 23, 2019.

Respectfully submitted,

/s/ ***Brian E. Spears***

Brian E. Spears
Spears Manning & Martini

Counsel for Defendant-Appellant
Ezhil Kamaldoss

cc: All counsel of record

[1] If this Court were to interpret the majority opinion in *Alisigwe* more broadly as applying to forensic searches of cellphones and conclude that *Alisigwe* provides a basis for rejecting Mr. Kamaldoss's argument that a Fourth Amendment violation occurred in this case, then *Alisigwe* would be in conflict with Supreme Court and Second Circuit caselaw and should be overruled. (*See* Brief of Appellant (ECF 54) and Reply Brief (ECF 90).) Because *Alisigwe* is readily distinguishable from the facts of this case, and because one panel of this Court cannot overrule another, however, Mr. Kamaldoss presents this argument solely for preservation purposes at this time and reserves his right to further argue, if necessary, that upon *en banc* review, the full Court should overrule *Alisigwe* and recognize the applicability of the Fourth Amendment's warrant requirement under the facts of this case.